**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **VINCENT DOBRSKI,** | ) | **CASE NO. 1:13 CV 1439** |
| | ) | |
| **Plaintiff,** | ) | **Judge Dan Aaron Polster** |
| | ) | |
| **vs.** | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| **INTERNATIONAL UNION, UNITED** | ) | **AND ORDER** |
| **AUTOMOBILE, AEROSPACE AND** | ) | |
| **AGRICULTURAL IMPLEMENT,** | ) | |
| **WORKERS OF AMERICA, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

*Pro se* plaintiff Vincent Dobrski filed this action under 42 U.S.C. §§ 1983 and 2000e against the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") and UAW employees Jimmie D. Williams, Jimmy Settles, Wendy Fields-Jacob, and Bahati Jaha.  In his Complaint (Doc. # 1), plaintiff alleges he was wrongfully terminated from his employment with Ford Motor Company, and that defendants thereafter wrongfully delayed or refused to process the grievance he filed on the basis of his race.  He seeks $600,000 in monetary damages for lost wages, bonuses and benefits, as well as an order compelling an investigation of defendants' filings with the Office of Labor Management Standards.  For the reasons that follow, this action is **DISMISSED**.[1]

---

[1] The Court takes notice that plaintiff has filed two previous actions against his former employer, Ford Motor Company.  *See Dobrski v. Ford Motor Co.*, No. 1:07-cv-2736 (N.D. Ohio removed on Sept. 11, 2007) (O'Malley, J.) (dismissed without prejudice pursuant to voluntary stipulation on

## I.  BACKGROUND

The Complaint is rambling and at times incoherent, however, it appears to make the following factual allegations.  On March 20, 2007, while he was out on approved vacation and during the midst of his campaign to be elected Vice President of UAW Local 420, Dobrski was terminated from his position at Ford Motor Company in Walton Hills, Ohio.  Thereafter, a "five day quit" grievance was "fabricated with a false date stamp" and was filed on behalf of Dobrski. (Doc. # 1 at 2.)  Dobrski contends Williams delayed in processing the grievance and that he "has held on to it to this day."  (*Id.*)  He claims he complained to Williams about his treatment of the grievance, but Williams disregarded his complaints and instead contacted Ford's human resources department, stating Dobrski should be psychologically evaluated.

Throughout 2008, Dobrski contacted several of the other defendants to complain about

---

April 30, 2008); and *Dobrski v. Ford Motor Co.*, No. 1:09-cv-963 (N.D. Ohio filed on April 27, 2009) (Pearons, J.)  (summary judgment granted to defendant on Mar. 28, 2013).  During the pendency of the second action, the court granted a motion by the UAW for an order to protect non-party witnesses from harassment, and ordered plaintiff to have no contact with the UAW's members employees, officers, and agents.  *Dobrski*, No.  1:09-cv-963, Doc. #42.  Further, the court granted a request by Ford to conduct an investigation into plaintiff's alleged harassing and threatening behavior toward potential witnesses.  Following that investigation and a hearing before the Magistrate Judge, the court granted a motion by defendant Ford to sanction Dobrski and ordered him to pay to Ford a total of $4,444.90.  *Id.* at Doc. #s 69 and 77.  Thereafter, the UAW notified the court that Dobrski had continued to engage in harassing behavior and the Magistrate Judge referred the matter to the United States Attorney for the Northern District of Ohio to conduct an investigation to determine whether Dobrski had violated one or more of the court's Orders.  *Id.* at Doc. #92.  Plaintiff is hereby cautioned that by presenting the instant Complaint to the Court, he has certified that to the best of his knowledge, information, and belief, that the pleading is not presented for any improper purpose, including harassment of defendants, and that his legal claims and factual allegations are supported by the law and evidence.  Fed. R. Civ. P. 11(b). While Rule 11 permits a court to order an unrepresented party to show cause why conduct does not violate the rule, see Fed. R. Civ. P. 11(c)(3), the Court is not inclined to do so at this juncture, but today's opinion shall not prevent defendants from filing a Rule 11 motion against plaintiff or from seeking other appropriate relief within this Court's inherent powers.

Williams' handling of his grievance.  Specifically, he claims that in or around May through July 2008, he contacted Settles, the Vice-President of the UAW Ford division, but Settles never spoke to him or returned his phone calls.  Further, sometime in June of 2008, Dobrski contacted Fields-Jacob and she purportedly told him she "would look in to it," but she also did not return his call.  Finally, in December 2008, Dobrski received a letter from Jaha indicating his grievance was "in the 3rd and a ½ stage."  (Doc. #1 at 3.)  Dobrski states no such stage exists in the "Union book."  (*Id.*)

In December 2008, Dobrski asserts he had "a controlled conversation" with Williams, during which Williams allegedly made false promises to Dobrski about his employment with Ford and back pay owing to him.  (*Id.*)  He also contends that Williams refused to meet him at the UAW "Region 2B" in Independence, Ohio to handle the grievance.

Based on the foregoing factual allegations, Dobrski alleges three claims as follows.  In Count One, he claims reverse discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.A. § 2000e, and § 1983, stemming from defendants' purported unification "against Plaintiff to aid an African-American employee in the Local 420 UAW Vice-Presidential election" and their alleged preferential treatment of grievances filed by African-American employees.  Plaintiff does not identify his own race, except to imply that he is not African-American.  In Count Two, he alleges a state law claim for negligent infliction of emotional distress.  Finally, in Count Three, plaintiff asserts a claim for libel/slander, indicating defendants have produced both written and oral false publications about him.

## II.  STANDARD OF REVIEW

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364,

365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), a "district court may, at

any time, *sua sponte* dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule

12(b)(1) of the Federal Rules of Civil procedure when the allegations of a complaint are totally

implausible, attenuated, unsubstantial, frivolous, devoid of merit or no longer open to

discussion." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see Hagans v. Lavine*, 415 U.S.

528, 536-37 (1974) (citing numerous Supreme Court cases for the proposition that patently

frivolous claims divest the district court of jurisdiction); *In re Bendectin Litig.*, 857 F.2d 290,

300 (6th Cir. 1988) (recognizing that federal question jurisdiction is divested by obviously

frivolous and unsubstantial claims).

Legal conclusions alone are not sufficient to present a valid claim. *Morgan v. Church's

Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).  This Court is not required to accept

unwarranted factual inferences. *Id.*; *see also Place v. Shepherd*, 446 F.2d 1239, 1244 (6th Cir.

1971) ("A pleading will not be sufficient to state cause of action under Civil Rights Act if its

allegations are but conclusions.").  To set forth a valid claim, a complaint "must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)). *See also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) ("dismissal standard

articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim.")  Even

liberally construed, the Complaint in this case does not set forth a colorable claim for relief.

## III.  ANALYSIS

### A.       *Section 1983*

In the Complaint, plaintiff invokes § 1983 as a basis for this Court's jurisdiction and his

reverse discrimination claim.  To establish a prima facie case under § 1983, plaintiff must assert that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981).  Section 1983 is only applicable to private parties where the actions taken "can fairly be seen as state action."  *Rendell–Baker v. Kohn*, 457 U.S. 830, 838 (1982).  A plaintiff does not have a cause of action under § 1983 against a private party no matter how discriminatory or wrongful the party's conduct.  *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) (citing *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)).  Each of the defendants in this case are private parties and there is no allegation that they exercised any powers which are traditionally exclusively reserved to the state.  Therefore, plaintiff has no cause of action against defendants under § 1983.  Accordingly, Dobrski's § 1983 claims are dismissed.

**B.**     ***Title VII***

In Count One of the Complaint, plaintiff alleges a reverse discrimination claim under Title VII, 42 U.S.C. § 2000e against the UAW and four of its employees.  Plaintiff alleges defendants discriminated against him by giving preferential treatment to African-American union members.

As a preliminary matter, the individual defendants are not subject to suit under Title VII. Title VII liability attaches to unlawful employment practices of employers, employment agencies, labor organizations, or the joint actions of these entities.  42 U.S.C. § 2000e-2. Individual supervisors or coworkers are not personally liable under Title VII.  *Wathen v. General Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997) ("We now hold that an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held

-5-

personally liable under Title VII."); *see also Mathis v. CWA Local Union 4320*, No. 2:10-CV-1093, 2011 WL 3497189 (S.D. Ohio Aug. 9, 2011) (holding a union official is not liable in his individual capacity for discrimination under a Title VII claim); *Burrell v. Henderson*, 483 F. Supp. 2d 595, 600-01 (S.D. Ohio 2007) (president of labor union not liable in her individual capacity under ADEA or Title VII). Therefore, plaintiff's Title VII claims against defendants Williams, Settles, Fields-Jacob, and Jaha are hereby dismissed.

Further, there is no indication in the Complaint that plaintiff filed a charge and obtained a right to sue letter from the Equal Employment Opportunity Commission ("EEOC"), a necessary prerequisite for pursuit of a Title VII action for discrimination. *See Aaron v. Ford Motor Co.*, 479 F. App'x 670, 672 (6th Cir. 2012) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798 (1973); *Fritz v. FinancialEdge Cmty. Credit Union*, 835 F. Supp. 2d 377, 381 (E.D. Mich. 2011) ("An individual may not file suit under Title VII if she does not possess a 'right to sue' letter from the EEOC.") (citing *Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1032 (6th Cir. 1998)).

Moreover, even if plaintiff could pursue his reverse discrimination claim, he has not stated a plausible claim for relief. Title VII makes it unlawful for a labor organization "to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(c). To allege a *prima facie* case of Title VII discrimination in a typical case, a plaintiff must assert that he: (1) is a member of a protected class; (2) was qualified for the job; (3) suffered an adverse employment decision; and (4) was replaced by a person outside the protected class or was treated differently than similarly situated non-protected employees. *Newman v. Fed. Express*

*Corp.*, 266 F.3d 401, 406 (6th Cir. 2001).  In a reverse discrimination case, where a member of a racial majority alleges racial discrimination, the first and fourth prongs of the test are different. *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603 (6th Cir. 2003).  Under the first prong, the plaintiff "must demonstrate background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Id.* at 614 (citing *Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 255 (6th Cir. 2002)).  To satisfy this prong, a plaintiff may present evidence of the defendant's unlawful consideration of race in prior employment decisions (*Sutherland*, 344 F.3d at 615), evidence that the person responsible for the employment decision was a minority (*Zambetti*, 314 F.3d at 257), or evidence of ongoing racial tension in the workplace (*Boger v. Wayne Cnty.*, 950 F.2d 316, 324-25 (6th Cir. 1991). To satisfy the fourth prong, the plaintiff "must show that the defendant treated differently employees who were similarly situated but were not members of the protected class." *Sutherland*, 344 F.3d at 614.

According to plaintiff, the UAW "engaged in a pattern of conduct that is discriminatory against [him] because he is not the same race[,]" . . . "unified against [him] to aid an African-American employee in the Local 420 UAW Vice-Presidential elections," and aided "several other African-American employees, in numerous situations involving, but not limited to drugs, weapons, grand larceny, and other illegal activities."  (Doc. #1 at 3-4.)  This claim, however, is wholly conclusory; plaintiff does nothing more than proffer bare allegations that African-American union members received different treatment.  *Twombly*, 550 U.S. at 556-57 (a plaintiff must do more than recite the formulaic elements of a cause of action but must include enough facts to raise a reasonable expectation that discovery will reveal evidence).  Plaintiff

-7-

fails to elaborate or provide any examples of the UAW's "pattern of conduct" of reverse racial discrimination.  Plaintiff identifies the union officials he dealt with but he does not identify their races or even his own race, other than to say that he is not African-American.  Nor does he identify specific actions the union officials took or that he was similarly-situated to the African-American members who were supposedly treated differently.  In short, the Complaint is devoid of any factual allegations regarding any background circumstances that would support a suspicion that the Union demonstrated a preference for minority members over the majority.

Under these circumstances, plaintiff's Title VII claims must be dismissed.

### C.    *Infliction of Emotional Distress*

In Count Two of the Complaint, plaintiff alleges he has suffered emotional distress as a result of defendant's negligent handling of his grievance.  Claims for emotional distress are governed by either a two-year statute of limitations, Ohio Rev. Code § 2305.10(A); *Callaway v. Nu-Cor Auto. Corp.*, 166 Ohio App. 3d 56, 65 (Ohio Ct. App. 2006) (negligent infliction of emotional distress), or a four-year statute of limitations, Ohio Rev. Code § 2305.09(D); *Biro v. Hartman Funeral Home*, 107 Ohio App. 3d 508, 513 (Ohio Ct. App. 1995) (intentional infliction of emotional distress).[2]  An infliction of emotional distress claim accrues when the tort

---

[2] Plaintiff characterizes this claim as a claim for negligent infliction of emotional distress. The Ohio Supreme Court has recognized the tort of negligent infliction of emotional distress.  *See Paugh v. Hanks*, 6 Ohio St. 3d 72, 74 (1983).  However, a plaintiff may only bring a claim for negligent infliction of emotional distress where "the plaintiff is cognizant of real physical danger to [himself] or another."  *King v. Bogner*, 88 Ohio App. 3d 564, 569 (Ohio Ct. App. 1993) (emphasis added) (citation omitted) (the plaintiff could not maintain a claim for negligent infliction of emotional distress where she was not cognizant of any physical danger resulting from a slanderous statement); *Heiner v. Moretuzzo*, 73 Ohio St. 3d 80, 86-87 (1995) (Ohio courts have limited "recovery for negligent infliction of emotional distress to instances where the plaintiff has either witnessed or experienced a dangerous accident or appreciated the actual physical peril").  Here, the Complaint does not allege that plaintiff was cognizant of any physical danger to himself

is complete, "that is, at the time the injury is incurred and the emotional impact is felt." *Biro*, 107 Ohio App. 3d at 514 (injury from mishandling of plaintiff's father's remains was incurred when plaintiff learned of the mishandling rather than at the time of the mishandling); *Stewart v. Allen*, 2008 Ohio 1645, at *23 (Ohio Ct. App. 2008) (an infliction of emotional distress claim accrues when a plaintiff begins feeling the emotional impact of the injury).  Any emotional distress plaintiff suffered from defendants' handling of his grievance accrued as of December 2008, the last time he allegedly spoke with Williams regarding his grievance, more than four and a half years ago and beyond either the two- or four-year statutes of limitations.  Accordingly, this claim is time barred.[3]

Moreover, even if this claim was not time-barred, it is preempted by § 301 of the Labor Management Relations Act ("LMRA").  A state law claim is preempted if resolution of the state

---

or others.  Therefore,  the allegations do not support a claim for negligent infliction of emotional distress, and the Court liberally construes this claim to include a claim for intentional infliction of emotional distress.  In either case, the claim fails for the reasons stated above.

[3] Although the statute of limitations is an affirmative defense, a complaint can be dismissed for failure to state a claim if the allegations of the Complaint demonstrate that the claim would be barred by the applicable statute of limitations.  *Robinson v. City of Euclid*, No. 1:10CV1824, 2010 WL 3860609, at *1 (N.D. Ohio Sept. 30, 2010).  There is no purpose in allowing a matter that it is clearly time-barred to go forward.  *See Castillo v. Grogan*, 52 F. App'x 750, 751 (6th Cir. 2002) (district court may *sua sponte* dismiss complaint as time-barred when the defect is obvious); *Alston v. Tenn. Dep't of Corrs.*, No. 01-5818, 2002 WL 123688, at *1 (6th Cir. Jan. 28, 2002) ("Because the statute of limitations was obvious from the face of the complaint, *sua sponte* dismissal of the complaint was appropriate.");  *Hunterson v. Disabato*, No. 06-4409, 2007 WL 1771315, at *1 (3d Cir. June 20, 2007) (a district court may *sua sponte* dismiss a claim as time-barred where it is apparent from the complaint that the applicable limitations periods has run); *Ali v. Morgan*, No. 09–CV–39–KKC, 2009 WL 872896, at *3 (E.D. Ky. Mar. 27, 2009) (if a statute of limitations defense clearly appears on the face of a pleading, the district court can raise the issue *sua sponte*); *Balch v. City of Warren*, No.  4:07 CV 3879, 2008 WL 687079, at *1 (N.D. Ohio Mar. 10, 2008) (same).

law claim is substantially dependent on analysis of a § 301 contract. *See Allis-Chalmers v. Lueck*, 471 U.S. 202, 220 (1985). The Sixth Circuit has established a two-step approach to determining whether § 301 preemption applies:

> First, the district court must examine whether proof of the state law claim requires the interpretation of collective bargaining agreement terms. Second, the court must ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law. If the right both is borne [sic] of state law and does not invoke contract interpretation, then there is no preemption. However, if neither or only one criterion is satisfied, section 301 preemption is warranted.

*Pearson v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 99 F. App'x 46, 51 (6th Cir. 2004) (quoting *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994) (citations omitted)). Here, plaintiff's emotional distress claims arise out of the UAW's alleged mishandling of his grievance and their failure to comply with proper procedure "as dictated in the Union contract[]" and the "Union book." (Doc. #1 at 2-3.) As such, plaintiff's emotional distress claim would require the Court to analyze the terms of the UAW agreement with Ford and most likely the union's constitution and/or bylaws, therefore, this claim is preempted. See *Pearson*, 99 F. App'x at 53 (former local union president's claim for intentional infliction of emotional distress against local union, international union, and former international union officials, based on union's failure to comply with union constitution's due process provisions, required analysis of union constitution and was thus preempted by LMRA). Accordingly, plaintiff's emotional distress claim must be dismissed.

### D. Libel/Slander

In Count Three of the Complaint, plaintiff alleges defendants produced both written and verbal false communications about him that damaged his reputation and standing in the

-10-

professional community.  Aside from being wholly conclusory, this claim is also barred by the applicable statute of limitations.  Defamation claims are subject to a one-year statute of limitations under Ohio law and they are not subject to the discovery rule.  Ohio Rev. Code § 2305.11(A); *Lasmer Indus., Inc. v. AM Gen., LLC*, 741 F. Supp. 2d 829, 839 (S.D. Ohio 2010) (collecting cases).  Plaintiff identifies only one statement that could conceivably support his defamation claim.  He alleges that at some point prior to December 2008, Williams contacted Ford's human resources department and stated he should have a psychological evaluation done.  Plaintiff, however, did not file the Complaint until July of 2013, more than three years afer the permitted statutory period for asserting his defamation claim and, therefore, this claim is time-barred and must also be dismissed.

### IV.  CONCLUSION

Accordingly, for the foregoing reasons, plaintiff's Complaint is **DISMISSED**.  Further, The Court **CERTIFIES** pursuant to 28 U.S.C. § 1915(a)(3),that an appeal from this decision could not be taken in good faith.[4]

**IT IS SO ORDERED**.

　　　　　　　　　　　　　　　 */s/Dan Aaron Polster 7/9/13*
　　　　　　　　　　　　　　　 **Dan Aaron Polster**
　　　　　　　　　　　　　　　 **United States District Judge**

---

[4] 28 U.S.C. § 1915(a)(3) provides that "[a]n appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith."

-11-